IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SEAN ROSE, #R54602, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 23-cv-03799-SMY |
| | ) |
| KHOREY J. ANDERTON, | ) |
| LIEUTENANT McBRIDE, | ) |
| KAY LOWERY, | ) |
| D. GALLOWAY, | ) |
| JOHN DOE 2 (PREA Compliance Manager), | ) |
| SHANE TASKY, | ) |
| MILES, | ) |
| CHEEK (Illinois State Investigator), | ) |
| CLARK (Illinois State Investigator), | ) |
| ISI JANE DOE (Supervisor of Illinois State Investigators), | ) |
| RYAN NOTTINGHAM (IDOC PREA Coordinator), | ) |
| ROB JEFFREYS (Former IDOC Director), | ) |
| and IDOC DIRECTOR, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Sean Rose, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Western Illinois Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred while he was housed at Big Muddy River Correctional Center (Docs. 1, 11). He claims he was subjected to unconstitutional conditions while in segregation, deprived of his prescribed medications, subjected to excessive force and mental stress to coerce a statement regarding abuse by a correctional officer, and improperly subjected to disciplinary sanctions and a transfer. (Doc. 11). He seeks monetary damages, and declaratory and injunctive relief. (Doc. 11, p. 24).

1

This case is now before the Court for preliminary review of the First Amended Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## The First Amended Complaint

Plaintiff makes the following allegations in the First Amended Complaint (Doc. 11): While Plaintiff was incarcerated at Menard Correctional Center's Medium Security Unit, he was repeatedly sexually assaulted by correctional officers (Doc. 11, p. 15). He was transferred to Big Muddy Correctional Center on February 21, 2022, after the sexual abuse came to light and an investigation was begun by Defendant Clark (Illinois State Investigator).

Plaintiff was placed in a segregation cell where the window was open and unable to be shut, and he was not given adequate clothing. Plaintiff's psychological medications were withheld for some time beginning February 21, 2022. Unidentified staff and nurses ignored Plaintiff's complaints about the cell conditions and medication, taunted him, and tampered with his food. Plaintiff was deprived of sleep for days because of the cold temperature and lack of medications. He suffered a mental breakdown including hallucinations, paranoia, and severe depression.

Clark interrogated Plaintiff on February 23, 2022 for nearly six hours in coordination with Defendant Illinois State Investigator ("ISI") Supervisor Jane Doe, who would sometimes direct Clark on what to say and do during the interrogation (Doc. 1, p.16). Clark showed Plaintiff a photo of Plaintiff's son, who was also incarcerated at Big Muddy, and told him "this ordeal could all be over" and Plaintiff would be with his son if he did what Clark asked (Doc. 11, p. 16). Because of a previous interaction with Clark, Plaintiff believed Clark was trying to extract statements he could

use to hurt Plaintiff or his family members who had become close to C/O Sheets (the officer under investigation for the incidents at Menard). Plaintiff was unable to think straight or verbally communicate because of his worsening mental condition and fear of the consequences of speaking. Clark wanted Plaintiff to admit to sexual activities and that C/O Sheets brought contraband into Menard. Clark was not satisfied with Plaintiff's statement and told Plaintiff he would send him back to segregation to think. Plaintiff asked Clark about receiving his clothing and closing his cell window, but Clark responded those conditions would remain the same.

Before departing, Clark introduced Plaintiff to Defendant Lt. Anderton (Internal Affairs Officer at Big Muddy). Anderton told Plaintiff to give Clark what he needed, and if he did so, Anderton would be "Plaintiff's guy" at Big Muddy and give him everything he wanted, including his choice of jobs and housing with his son (Doc. 11, p. 17).

Clark returned for another interrogation on February 25, 2022. Plaintiff was in a deep mental health breakdown and unable to function. Clark flew into a rage and threatened Plaintiff with retaliation, including transfer to the worst "shithole" prison, trumped up disciplinary charges, and disruption of medical treatment, if Plaintiff did not give him a Prison Rape Elimination Act ("PREA") complaint with the elements Clark required.

Anderton, at the direction of Clark, wrote Plaintiff a disciplinary report on February 25, 2022 for possessing nude photos and sexually explicit letters from Sheets (Doc. 11, p. 17). Plaintiff had saved this material as evidence of sexual abuse, "as instructed by all IDOC orientation manuals" (Doc. 11, p. 17). Anderton told Plaintiff he had "dropped the ball" and the ticket was to "wake [Plaintiff] up" (Doc. 11, p. 18). He said the ticket would go away and Plaintiff could be placed with his son as soon as Plaintiff "did the right thing." *Id.*

Anderton entered Plaintiff's cell several times between February 25, 2022 and March 9,

3

2022, making threats and promises seeking Plaintiff's cooperation to write a PREA complaint and signed statement to satisfy Clark.  On some occasions, Anderton took Plaintiff to the Internal Affairs Office and spoke to Clark by phone.  Anderton was aware that Plaintiff was in a deepening mental health crisis and warned him not to do anything stupid like harming himself.  When Plaintiff was unresponsive or failed to write the statement, Anderton punched, pushed, and slapped him, injuring Plaintiff's left ear on one occasion.

Plaintiff was periodically taken before the Adjustment Committee, consisting of Defendants Miles and Tasky, who would pretend to hold a hearing on the disciplinary ticket.  Miles and Tasky told Plaintiff if he didn't help them, they would not help him; advised him to do what the other officers requested; and threatened Plaintiff with severe sanctions and long segregation time if he didn't cooperate.  Anderton would then retrieve Plaintiff from the Adjustment Committee (Doc. 11, p. 19).

Plaintiff was taken to see mental health provider Defendant Kay Lowery, who also encouraged Plaintiff to cooperate and end the ordeal.  Plaintiff reported the torture and abuse to Lowery, but she ignored these complaints and advised him to use coping mechanisms such as deep breathing.  Plaintiff later learned that Lowery falsified his medical documents and misrepresented his statements in her reports (Doc. 11, p. 19).

Plaintiff made a written statement on approximately March 6, 2022, under the direction of Anderton, which was sent to Clark.  The next day, Plaintiff learned Clark was not satisfied with the statement.  Plaintiff was taken for an actual disciplinary hearing where the Adjustment Committee found him guilty of possession of unauthorized information and contraband (Doc. 11, p. 19).[1]

---

[1] Plaintiff included the disciplinary report with the original Complaint (Doc. 1, p.25), but did not append it to the First Amended Complaint.  The report showed that contrary to Plaintiff's statement of facts, he was found "not guilty" of

On or about March 9, 2022, Plaintiff saw the psychiatrist, who increased his dosage of anxiety medications and gave him a new prescription for hallucinations and severe depression (Doc. 11, p. 20). Plaintiff was scheduled for a two-week checkup.

Also on approximately March 9, 2022, Anderton told Plaintiff he was being transferred to the "shithole" Pinckneyville Correctional Center because Plaintiff's PREA complaint was unsatisfactory, but he would give Plaintiff one last chance to write a PREA complaint detailing sexual intercourse with Sheets. If he did so, Plaintiff would stay at Big Muddy with his son and the disciplinary report would be expunged (Doc. 11, p. 20). Plaintiff spoke with Clark by phone and agreed to write a new statement, but Plaintiff was terrified of the consequences of his cooperation on his mother and Sheets' children, and of the possibility Clark was lying and would continue to punish him.

Defendant Cheek (Illinois State Investigator) spoke to Clark and took Plaintiff's statement. Plaintiff's new PREA complaint detailed the sexual abuse "to some extent," but he was still afraid to admit he had intercourse or that Sheets was bringing contraband into the prison (Doc. 11, pp. 20-21). Cheek then spoke to Clark by phone. Plaintiff heard Cheek say, "No, nothing we can get her charged for, just PREA" (Doc. 11, pp. 20-21). Cheek then told Plaintiff that Clark was upset and was sending Plaintiff to Western Illinois Correctional Center, which was worse and would interfere with Plaintiff's ongoing outpatient dermatology treatment.

On March 10, 2022, Plaintiff became suicidal and psychotic, hallucinated, and began screaming for emergency crisis intervention (Doc. 11, pp. 20-21). Defendant Lt. McBride instructed his subordinate officers to ignore Plaintiff. After McBride went off shift, a sergeant

---

impeding an investigation (the 110 charge). He was punished with 29 days in segregation and three months of C-grade status for having staff member pictures (211 charge) and contraband (308 charge). (Doc. 1, p. 25). The 308 charge was later deleted as duplicative and the C-grade punishment on the 211 charge was deleted (Doc. 11, p. 8).

tried to get crisis intervention. Defendant Lowery came to Plaintiff's cell and told him after speaking to McBride, she did not believe Plaintiff needed crisis intervention. Plaintiff began to scream again and was placed in waist chains and taken to Healthcare to speak with Mental Health. When he arrived, he was met by Anderton and Defendant Warden D. Galloway. Plaintiff related his treatment by the other defendants and how they had used his son to inflict mental harm, leaving him suicidal. Galloway stated he had the ability to keep Plaintiff at Big Muddy and would do so. Galloway instructed Plaintiff to go back to his cell, not harm himself, and he would stop the transfer (Doc. 11, p. 21).

Plaintiff was transferred to Western Illinois the next day, without any of his property such as underwear or other clothing (Doc. 11, p. 22). Anderton approached Plaintiff before he left. Plaintiff told Anderton he was a liar and Plaintiff would kill himself because of what Anderton had done. Anderton told Plaintiff he would be okay, and he would try to get him transferred back to Big Muddy after everything blew over. Anderton claimed the decisions about Plaintiff's treatment were made by others over his head, and he would have done things differently.

The John Doe PREA Compliance Manager at Big Muddy failed to ensure the facility complied with PREA and failed to protect Plaintiff even after he made the PREA complaint on March 9, 2022.

Plaintiff later discovered that someone at Big Muddy had altered his disciplinary sanctions and added other punishment; these items were corrected by the Record Office at Western Illinois (Doc. 11, pp. 8, 22).

All defendants conspired to deprive Plaintiff of his constitutional rights (Doc. 11, p. 22). IDOC PREA Coordinator Ryan Nottingham and the IDOC Director failed to follow IDOC official policies and PREA guidelines that provided for 90 days of "retaliation monitoring" after the PREA

6

complaint (Doc. 11, p, 23). Former IDOC Director Rob Jeffreys permitted "almost all IDOC staff" to view the confidential details of Plaintiff's sexual abuse, facilitating retaliation against him.

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

| | |
|---|---|
| Count 1: | Eighth Amendment claim against Clark and Anderton for allowing Plaintiff to remain in a freezing cold segregation cell without adequate clothing between approximately February 21, 2022 and March 11, 2022. |
| Count 2: | Eighth Amendment claim against Clark, Anderton, Jane Doe ISI Supervisor, Miles, Tasky, Lowery, and Cheek for subjecting Plaintiff to psychological and physical torture in attempting to extract information to pursue charges or discipline against C/O Sheets. |
| Count 3: | Eighth Amendment excessive force claim against Anderton for striking Plaintiff during his interrogations. |
| Count 4: | Fourteenth Amendment claim against Clark and Anderton for issuing the February 25, 2022 disciplinary report on Plaintiff and against Miles and Tasky for finding Plaintiff guilty on March 6, 2022 and imposing punishment. |
| Count 5: | Eighth Amendment deliberate indifference claim against McBride and Lowery for preventing Plaintiff from accessing mental health crisis intervention on March 10, 2022. |
| Count 6: | First Amendment retaliation claim against Clark, Anderton, and Galloway for transferring Plaintiff to Western Illinois Correctional Center because Plaintiff did not sufficiently "cooperate" with the investigation of staff misconduct at Menard. |
| Count 7: | Claim against the John Doe PREA Compliance Manager at BMRCC for failing to protect Plaintiff following his March 9, 2024 PREA complaint and failing to ensure PREA compliance at BMRCC; against Nottingham and the IDOC Director for failing to provide retaliation monitoring; and against Jeffreys for allowing staff to view information on the sexual abuse of Plaintiff. |
| Count 8: | Conspiracy claim against all Defendants for acting in concert to violate Plaintiff's constitutional rights as detailed in Counts 1-7. |

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

### Discussion

### Count 1

Extreme temperatures in a prison cell can violate the Eighth Amendment's prohibition against cruel and unusual punishment. A lack of heat, particularly when the inmate is not given adequate clothing, blankets, or other means to combat the cold, may amount to a constitutional violation. *See Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). The severity of the extreme temperature as well as the duration of the cell conditions must be considered to determine whether a violation has occurred. *Johnson v. Prentice*, 29 F.4th 895, 904 (7th Cir. 2022). The conditions must have resulted in an unquestioned and serious deprivation of a basic human need such as physical safety. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Plaintiff alleges that he told Clark about the freezing conditions in his cell and his lack of clothing, but Clark refused to remedy the problems. He also alleges that Anderton visited him in his cell, indicating he was also aware of the conditions. Plaintiff does not state how many days he was subjected to the extreme cold. He also alleges that he suffered from lack of sleep that contributed to his mental breakdown. Based on these allegations, the deliberate indifference claim in Count 1 may proceed against Clark and Anderton.

### Count 2

The Eighth Amendment forbids unnecessary and wanton infliction of pain, and punishment

8

grossly disproportionate to the severity of the crime. *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). To state a colorable claim, the prisoner must plead facts suggesting they were denied "the minimal civilized measure of life's necessities," amounting to a serious deprivation of basic human needs that created an excessive risk to health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Rhodes*, 452 U.S. at 347. A prisoner must also sufficiently allege that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions. *Farmer*, 511 U.S. at 842. The gratuitous infliction of psychological pain may violate the Eighth Amendment. *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (citing *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)).

Plaintiff alleges that Clark, Anderton, the Jane Doe ISI Supervisor, Miles, Tasky, Lowery, and Cheek subjected him to psychological pressure tactics beginning on February 23, 2022, and continuing through March 9, 2022, attempting to coerce statements from Plaintiff implicating C/O Sheets in misconduct. Anderton's alleged actions included physically abusing Plaintiff. Plaintiff also alleges that during this time, his mental state deteriorated to a serious breakdown including hallucinations, psychosis, and a decision to take his own life. These allegations are sufficient for Plaintiff to proceed on his Eighth Amendment claim in Count 2 against Clark, Anderton, the Jane Doe ISI Supervisor, Miles, Tasky, Lowery, and Cheek. However, Plaintiff must identify the Jane Doe ISI Supervisor by name before he can proceed against her.

### Count 3

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). To state a claim, an inmate must plead facts indicating that an assault occurred, and

that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). Under this standard, Count 3 may proceed against Anderton for striking Plaintiff while attempting to persuade him to make a statement implicating Sheets.

### Count 4

Standing alone, the issuance of the February 25, 2024 disciplinary report charging Plaintiff with possession of contraband and other violations, the guilty finding, and the punishment imposed do not state a Fourteenth Amendment claim upon which relief may be granted. Even an allegedly false disciplinary charge does not raise a viable claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539, 556-72 (1974) (advance written notice of the charge, right to appear before the hearing panel, the right to call witnesses if prison security allows, and a written statement of the reasons for the discipline imposed). Further, the disciplinary decision must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994); *see also Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) (meager amount of evidence is sufficient to satisfy due process).

Here, the disciplinary proceeding established that Plaintiff did in fact possess material that he was forbidden to have, thus the guilty finding had evidentiary support. And while Plaintiff's allegations about Tasky's and Miles' involvement in the efforts to coerce a satisfactory statement from Plaintiff raise a question about the impartiality of the hearing panel, which is a due process requirement, *see Hewitt v. Helms*, 459 U.S. 460, 466 n.3 (1983), the short duration of Plaintiff's segregation punishment (29 days) resulting from the guilty finding, and the lack of allegations suggesting that Plaintiff suffered conditions that amounted to an "atypical and significant hardship

forecloses a due process claim. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997); *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). Accordingly, the due process claim in Count 4 will be dismissed without prejudice.

### Count 5

Prison officials and medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical or mental health needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical or mental health condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Rasho*, 856 F.3d at 475.

The allegations in the Complaint are sufficient for Plaintiff to proceed on the deliberate indifference claim in Count 5 against McBride and Lowery for denying Plaintiff's access to mental health crisis intervention.

### Count 6

Prison officials may not retaliate against inmates for exercising their First Amendment rights to file grievances, lawsuits, or otherwise complain about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002). To state a retaliation claim, a prisoner must allege that he engaged in constitutionally protected activity and that prison officials took adverse action against him because he engaged in the protected activity. *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014).

Plaintiff's retaliation claim is tied to his decision to not fully divulge information regarding his interactions with the Menard officer who was under investigation. However, a prisoner's

refusal to act as an informant does not constitute protected speech under the First Amendment. *Caffey v. Maue*, 679 F. App'x 487, 490 (7th Cir. 2017).  Accordingly, Count 6 will be dismissed.

### Count 7

Plaintiff does not explain how the Defendant John Doe PREA Compliance Manager failed to ensure PREA compliance and failed to protect him after Plaintiff filed the March 9, 2022 PREA complaint.  Nor does he describe any interactions with this Defendant.

Under § 1983, a supervisor or administrator cannot be held liable merely because they held authority over others who allegedly violated the Constitution.  Supervisors and administrators are responsible only for their own acts, not "for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029-30 (7th Cir. 2018).  Further, the PREA does not provide for a private cause of action, and there is no constitutional right to a PREA investigation under § 1983.  *See McRae v. Myers*, No. 22-1821, 2023 WL 2423590, at *3 (7th Cir. Mar. 9, 2023), *cert. denied*; *Walters v. Bello*, 2024 WL 3252508 at *3 (S.D. Ind. June 28, 2024).

Plaintiff's allegation that Nottingham and the IDOC Director failed to follow prison rules and PREA guidelines to provide retaliation monitoring likewise fails to state a viable claim because a prison official's failure to comply with prison administrative rules, including the PREA regulations, does not amount to a constitutional violation.  *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001) (a federal court does not enforce state law or regulations).

Plaintiff claims that Rob Jeffreys facilitated retaliation against him by allowing IDOC staff to view information about his sexual abuse.  But he does not describe any retaliatory or other adverse action that resulted from Jeffreys' alleged disclosure.  As such, this allegation fails to state a claim for retaliation or any other constitutional violation.

For these reasons, Count 7 and Defendants John Doe PREA Compliance Manager, Ryan

Nottingham, the IDOC Director, and Rob Jeffreys will be dismissed from the action without prejudice.

### Count 8

Plaintiff cannot maintain a conspiracy claim, because all defendants are members of the same entity, the Illinois Department of Corrections. Under the intracorporate conspiracy doctrine, there can be no unlawful conspiracy among agents of the same legal entity. *Greene v. Teslik*, No. 21-2154, 2023 WL 2320767, at *4 (7th Cir. Mar. 2, 2023) (citing *Ziglar v. Abbasi*, 582 U.S. 120, 152-53 (2017)). Accordingly, Count 8 will be dismissed.

### Unknown/Jane Doe Defendant

Plaintiff is responsible for securing information aimed at identifying the Unknown Defendant Jane Doe (Supervisor of Illinois State Investigators), in accordance with the John/Jane Doe Identification Order that will be entered separately. Once the name of the unknown defendant is obtained, Plaintiff must file a motion to substitute the newly identified defendant in place of the generic designation in the case caption and throughout the Complaint. The Warden D. Galloway of Big Muddy River Correctional Center, in his official capacity only, will remain as a defendant for the purpose of responding to Plaintiff's requests for information regarding the identity of the Unknown Defendant. All claims against Galloway in his individual capacity are **DISMISSED**.

### Disposition

The Complaint states colorable claims in Count 1 against Anderton and Clark; in Count 2 against Anderton, McBride, Lowery, Tasky, Miles, Cheek, Clark, and the Jane Doe ISI Supervisor; in Count 3 against Anderton, and in Count 5 against McBride and Lowery. Counts 4, 6, 7, and 8, the John Doe 2 PREA Compliance Manager, Ryan Nottingham, the IDOC Director, and Rob Jeffreys, are **DISMISSED** without prejudice. All claims against Warden D. Galloway in his

individual capacity are **DISMISSED**; Galloway remains in the action in his official capacity only for identification of the Jane Doe ISI Supervisor.

The Clerk shall prepare for Khorey J. Anderton, Lt. McBride, Kay Lowery, Shane Tasky, Miles, Cheek, Clark, and Big Muddy River Correctional Center Warden D. Galloway (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the

costs. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  October 22, 2024**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.