IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SEAN ROSE, #R54602, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 23-cv-03799-SMY |
| ) | |
| KHOREY J. ANDERTON, ) | |
| JEREMY McBRIDE, ) | |
| KAY LOWERY, ) | |
| SHANE TASKY, ) | |
| RICHARD MILES, ) | |
| JOSHUA CHEEK, ) | |
| MICHAEL CLARK, and ) | |
| LATOYA HUGHES, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

**YANDLE, Chief Judge:**

This matter is before the Court on the motion for summary judgment filed by Defendant Lowery (Doc. 54) and the motion for partial summary judgment filed by Defendants Anderton, Clark, Cheek, McBride, Tasky, Miles, and Hughes ("the IDOC Defendants") (Doc. 66), asserting Plaintiff Sean Rose failed to properly exhaust his administrative remedies before filing suit. Plaintiff responded to both motions (Docs. 57, 68). The IDOC Defendants filed a reply (Doc. 71).[1] For the following reasons, Lowery's motion will be denied, and the motion filed by the IDOC Defendants will be granted in part and denied in part.[2]

---

[1] The Court ordered supplemental briefing (Doc. 74) regarding the applicability of *Perttu v. Richards*, 605 U.S. 460, 145 S. Ct. 1793 (June 18, 2025), which held that where a factual dispute on exhaustion is intertwined with a factual dispute that goes to the merits of the underlying substantive claim, a jury trial is required on the intertwined issue(s). After reviewing the parties' submissions (Docs. 78, 79, 81), the Court finds no issues of intertwinement requiring a jury trial on the exhaustion of administrative remedies in this case. Defendant Clark does not assert Plaintiff failed to exhaust the retaliation claim in Count 6. Moreover, Plaintiff claims Clark's retaliation was triggered by the content of Plaintiff's PREA statement/complaint, unlike the retaliation claim in *Perttu* based on defendants' alleged destruction of the grievances relevant to exhaustion.

[2] Given the undisputed material facts and grievances of record, the Court concludes it is not necessary to hold a hearing on the exhaustion issues raised in Defendants' motions.

## BACKGROUND

Plaintiff is currently incarcerated at Western Illinois Correctional Center. He filed this this *pro se* civil action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights that occurred at Big Muddy River Correctional Center ("BMRCC") (Docs. 1, 47).[3] Plaintiff claims he was held in unconstitutional conditions while in segregation, deprived of prescription medications, subjected to excessive force and psychological stress, and transferred in retaliation for protected speech.

Plaintiff makes the following allegations in the Second Amended Complaint: Plaintiff was sexually abused by correctional officers during his incarceration at Menard Correctional Center. After those incidents came to light, Plaintiff was transferred on February 21, 2022 to BMRCC. Plaintiff was placed in a segregation cell where the window was stuck open and he was not given adequate clothing to protect him from the cold temperatures. His psychiatric medications were withheld, and he suffered a mental breakdown.

Defendant Clark investigated the sexual abuse incidents. He interrogated Plaintiff at length on February 23, 2022 in coordination with Defendant Hughes and pressured Plaintiff to provide a satisfactory statement implicating Menard C/O Sheets in the abuse. Plaintiff told Clark about the freezing conditions in his cell, but Clark refused to correct them. Defendant Anderton offered to reward Plaintiff with his choice of jobs and housing with his son, who was also a prisoner at BMRCC, if Plaintiff gave Clark what he needed. Clark interrogated Plaintiff again on February 25, 2022 while Plaintiff was having a severe mental health breakdown. Clark threatened Plaintiff with disciplinary charges, disruption of his medical treatment, and transfer to a worse prison if Plaintiff didn't provide a satisfactory Prisoner Rape Elimination Act (PREA) complaint for the

---

[3] The Second Amended Complaint (Doc. 47) is the operative pleading. The case initially proceeded on Plaintiff's First Amended Complaint (Doc. 11), reviewed at Doc. 12.

2

Menard incidents.

At Clark's direction, Anderton wrote Plaintiff a disciplinary ticket for possession of photos and other material related to the sexual abuse (Doc. 55-2, p. 7). Anderton continued to verbally threaten Plaintiff. The threats escalated to punching, pushing, and slapping. Defendants Miles and Tasky pretended to hold hearings on the disciplinary ticket and threatened Plaintiff if he did not cooperate. Plaintiff gave a written statement to Anderton on or about March 6, 2022, however, it did not satisfy Clark. Soon after, Plaintiff's disciplinary ticket was heard and he was found guilty of misconduct.

While the above conduct was going on, Plaintiff reported the abuse to Defendant Lowery, a mental health provider. Lowery ignored his complaints and advised him to cooperate with the investigators.

On approximately March 9, 2022, Anderton told Plaintiff he would be transferred to Pinckneyville Correctional Center because his PREA complaint was unsatisfactory. However, Plaintiff would have one last chance to write a complaint detailing sexual intercourse with Sheets and if he did so, he could stay at BMRCC and the disciplinary report would be expunged. Defendant Cheek took Plaintiff's PREA statement, which did not contain all the details Clark wanted. Cheek called Clark, who was not satisfied. Cheek told Plaintiff Clark would move him to Western Illinois Correctional Center, which was worse and would interrupt his dermatology treatment. Clark ordered this transfer in retaliation for the contents of his PREA complaint.

The next day, Plaintiff became suicidal and psychotic and screamed for emergency crisis intervention. Defendant McBride ignored him. Lowery responded but refused crisis intervention. On March 11, 2022, Plaintiff was transferred from BMRCC to Western Illinois Correctional Center (Doc. 11, p. 22; Doc. 47, p.62).

Following preliminary review of the Second Amended Complaint (Doc. 47) under 28 U.S.C. § 1915A, Plaintiff is proceeding on the following claims (Doc. 12, pp. 7-14; Doc. 46, pp. 3-4):

| | |
|---|---|
| Count 1: | Eighth Amendment claim against Clark and Anderton for allowing Plaintiff to remain in a freezing cold segregation cell without adequate clothing between approximately February 21, 2022 and March 11, 2022. |
| Count 2: | Eighth Amendment claim against Clark, Anderton, Latoya Hughes (initially identified as the "Jane Doe ISI Supervisor"), Miles, Tasky, Lowery, and Cheek for subjecting Plaintiff to psychological and physical torture in attempting to extract information to pursue charges or discipline against C/O Sheets. |
| Count 3: | Eighth Amendment excessive force claim against Anderton for striking Plaintiff during his interrogations. |
| Count 5: | Eighth Amendment deliberate indifference claim against McBride and Lowery for preventing Plaintiff from accessing mental health crisis intervention on March 10, 2022. |
| Count 6: | First Amendment retaliation claim against Clark for transferring Plaintiff to Western Illinois Correctional Center in March 2022 based on the contents of Plaintiff's PREA complaint. |
| Count 9: | State law claim for intentional infliction of emotional distress against Anderton, McBride, Lowery, Tasky, Miles, Cheek, Clark, and Hughes. |

**Relevant Grievances**

***Three Grievances Dated March 12, 2022* (Doc. 66-2, pp. 5-10)** [4]

The ARB received one March 12, 2022 grievance on March 15, 2022 (Doc. 66-2, pp. 9-10) and two on March 18, 2022 (Doc. 66-2, pp. 5-8). The grievance received on March 15, 2022 seeks expungement of Plaintiff's disciplinary ticket (No. 202200169/1-BMR, dated 2/25/2022; Doc. 68, pp. 17-19) and sanctions imposed after the abusive investigation tactics by Clark and

---

[4] Plaintiff filed each of the listed grievances directly with the Administrative Review Board because they involved events at BMRCC and Menard, after Plaintiff's March 11, 2022 transfer to Western (Doc. 55-2, p. 433).

Anderton where Plaintiff was a victim under PREA (Doc. 66-2, pp. 9-10). The grievances received on March 18, 2022 complain of torture, threats, and physical abuse by Clark and Anderton during their investigation into Plaintiff's PREA case and request expungement of the ticket because it was issued to coerce Plaintiff's statement and improperly charged two offenses (Doc. 66-2, pp. 5-8). On July 8, 2022, the ARB denied these grievances, along with the grievance dated March 23, 2022 (received on March 30, 2022) (Doc. 66-2, p. 13; Doc. 68, p. 11). However, the ARB deleted the 308 disciplinary charge and modified the punishment. *Id.*

### *Grievance Dated March 17, 2022* **(Doc. 66-2, pp. 14-15)**

The ARB received this grievance on March 21, 2022. Plaintiff complains he was physically and mentally abused and tortured during the investigation by Clark, Anderton, and Galloway, and he was denied mental health services by McBride and others. In a separate July 8, 2022 response, the ARB ruled Plaintiff's claims of misconduct related to the investigation and disciplinary report of February 25, 2022 and were previously addressed on July 8, 2022 (Doc. 66-2, p. 21).

### *Grievance Dated March 18, 2022* **(Doc. 66-2, pp. 16-17)**

The ARB received this grievance on March 22, 2022. Plaintiff states he was given an illegal disciplinary ticket and was wrongly transferred to Western Illinois as part of the series of abuses by Clark and Anderton during the PREA investigation. His pleas for a mental health crisis team on March 10, 2022 were ignored. In an April 1, 2022 response, the ARB ruled this grievance and the grievance dated March 19, 2022, to be moot (Doc. 66-2, p. 20; Doc. 68, p. 12). The ARB categorized the grievances as "PREA/Staff Conduct – Retaliation" and remarked Plaintiff's "allegations are currently being investigated" and he would be notified of the outcome. *Id.*

5

### *Grievance Dated March 19, 2022* **(Doc. 66-2, pp. 18-19)**

The ARB received this grievance on March 22, 2022. Plaintiff grieved staff conduct, retaliation and coercion by the adjustment committee that included Miles, and the abuse by Clark and Anderton. He again asked for expungement of the discipline resulting from the March 7, 2022 hearing, asserting the adjustment committee was complicit in Clark's and Anderton's abuse. The ARB ruled this grievance "moot" on April 1, 2022 (see above) (Doc. 66-2, p. 20; Doc. 68, p. 12).

### *Grievance Dated March 23, 2022* **(Doc. 66-2, pp. 11-12)**

The ARB received this grievance on March 30, 2022. Plaintiff again sought expungement of the discipline imposed on the ticket heard on March 7, 2022 that resulted from Clark's investigation of the PREA violation against Plaintiff. On July 8, 2022, the ARB denied the grievance (along with the grievances received on March 15 and 18, 2022) but deleted one disciplinary charge. (Doc. 66-2, p. 13; Doc. 68, p. 11).

### *Two Grievances Dated April 10, 2022* **(Doc. 55-2, pp. 433-51, 459-73; Doc. 66-2, pp. 22-37, 39-57)**

The ARB received one grievance on April 29, 2022 (Doc. 55-2, pp. 459-73; Doc. 66-2, pp. 22-37) and the other on May 2, 2022 (Doc. 55-2, pp. 433-51; Doc. 66-2, pp. 39-57). Both grievances include a 12-page summary detailing the allegations later brought in this suit.[5] The grievance received May 2, 2022 included a copy of the challenged disciplinary report showing Defendant Tasky served as chair of the hearing committee (Doc. 66-2, p. 53). Plaintiff states he sent 14 separate grievances to the ARB regarding the investigation of his sexual abuse at Menard (Doc. 66-2, p. 25). He again complains about Clark's and Anderton's abusive and coercive investigation tactics including the disciplinary report and its handling by the adjustment

---

[5] The grievance records contain multiple copies of Plaintiff's 12-page summary dated April 10, 2022, indicating that he submitted the document on several occasions with other grievances. Those duplicate grievances are not all included in the Court's summary.

6

committee, the effect of these events on his mental health, the freezing cell, and Cheek's involvement in obtaining Plaintiff's PREA statement (Doc. 66-2, pp. 26-33). Shortly before Plaintiff's transfer from BMRCC, he told McBride and others that he was suicidal and needed a mental health crisis team (Doc. 66-2, pp. 33-34). A female mental health provider came to see him but refused to give him any treatment (Doc. 66-2, p. 34).

On May 2, 2022, the ARB responded to the grievance received on April 29, 2022, by directing Plaintiff to provide his original grievance and responses from the counselor, grievance officer, and C.A.O., and noting he failed to present the entire grievance on the correct form (Doc. 66-2, p. 38). On May 4, 2022, the ARB responded to the grievance received May 2, 2022, noting it was a duplicate to the one addressed on May 2, 2022 and indicating "No further redress" would be made (Doc. 66-2, p. 58).

### *Grievance Dated May 5, 2022* **(Doc. 55-2, p. 427; Doc. 66-2, pp. 59)**

This grievance was received by the ARB on May 11, 2022, along with the grievance dated May 7, 2022 (see below). Plaintiff again requested expungement of the disciplinary charge, another transfer because his move to Western was in retaliation, and return of family photos (Doc. 66-2, p. 59). On May 26, 2022, the ARB responded to this grievance and the one dated May 7, 2022, stating the matters of a mishandled investigation and rights violations were previously addressed on May 2, 2022 and May 4, 2022 (Doc. 55-2, p. 414).

### *Grievance Dated May 7, 2022* **(Doc. 55-2, pp. 430-431; Doc. 66-2, pp. 62-75)**

This grievance was also received by the ARB on May 11, 2022, and includes the identical 12-page summary of events attached to Plaintiff's April 10, 2022 grievance. Plaintiff requested the results of the PREA investigation, expungement of his disciplinary ticket, a transfer, and medical treatment (Doc. 66-2, p. 62). The ARB responded on May 26, 2022 to this and the May

7

5, 2022 grievance above, noting they had already been addressed on May 2, 2022 and May 4, 2022.

### *Grievance Dated September 30, 2022* **(Doc. 66-2, pp. 76-83)**

The ARB received this grievance on December 5, 2022. Plaintiff describes his sexual abuse at Menard that led Clark to declare Plaintiff a victim. He protests his discipline and transfer as retaliatory and includes a timeline of events during Clark's abusive investigation and the effects on his mental status. The IDOC Defendants did not provide a copy of any response from the ARB.

### *Grievance dated Nov. 17, 2022* **(Doc. 55-1, pp. 245-247; Doc. 66-2, pp. 84-86)**

The ARB received this grievance on November 28, 2022. Plaintiff complained that Lowery falsified the mental health records regarding her meetings with him at BMRCC in February 2022 and March 2022 to cover up her collusion with McBride and the I.A. investigators to deny him mental health crisis intervention (Doc. 55-1, pp. 245-247). He asserts that he did not know Lowery's name until he received his medical records in November 2022 (Doc. 57, p. 1). The ARB denied the grievance on March 24, 2023, finding staff misconduct claims against Lowery and McBride unsubstantiated (Doc. 55-1, p. 231; Doc. 57, p. 4; Doc. 66-2, p. 87).

## **DISCUSSION**

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner may not file a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "The exhaustion

8

requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011); *see also Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022).

For a prisoner to properly exhaust his administrative remedies, he or she must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. Exhaustion must be fully completed before the prisoner files suit; a case filed while a grievance appeal is still ongoing is premature and must be dismissed without prejudice. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020); *see* also *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Because Plaintiff was an IDOC inmate when he filed this action, he was required to follow the grievance process set forth in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, *et seq*. (2017). Under IDOC's procedure, an inmate initiates a grievance with his counselor, and he may then submit his grievance to a grievance officer at his facility, and to the Chief Administrative Officer ("CAO") at his facility. "A grievance must be filed...within 60 days after the discovery of the incident, occurrence or problem that gives rise to the grievance." 20 ILL. ADMIN. CODE § 504.810(a). A grievance must "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the prisoner does not know a person's name, he "must include as much descriptive information about the individual as possible." *Id.*

If an inmate is unsatisfied with the outcome at the facility, he must appeal to the Administrative Review Board ("ARB") within 30 days. 20 ILL. ADMIN. CODE § 504.850(a).

Notably, a grievance must be submitted directly to the ARB if it involves a disciplinary proceeding from, or other issue pertaining to, a facility other than the facility where the inmate is currently assigned.  20 ILL. ADMIN. CODE § 504.870(a).

An inmate is required to exhaust only those administrative remedies that are available to him.  *See Ross v. Blake*, 578 U.S. 632, 642 (2016).  Administrative remedies become "unavailable" when prison officials fail to respond to a properly filed inmate grievance or when prison employees thwart a prisoner from exhausting.  *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

### Motion for Summary Judgment by Lowery (Doc. 54)

Lowery is implicated only in Counts 2, 5, and 9.  Lowery identifies two grievances, both filed after Plaintiff's transfer to Western, which complain about non-treatment of mental health after his transfer to Western and do not describe problems at BMRCC.  These are No. 22-1222, dated March 18, 2022 (Doc. 55-2, p. 353) and an unnumbered grievance dated June 13, 2022 (Doc. 55-2, p. 398-401).  Lowery asserts she was not named in either grievance, they did not describe any misconduct on her part, and thus they failed to exhaust Plaintiff's claims.  (Doc. 55, pp. 8-9).

The Court agrees that these grievances (No. 22-1222 and the June 13, 2022 grievance) did not exhaust Plaintiff's claims against Lowery.  However, Plaintiff also filed the April 10, 2022, May 5, 2022, and May 7, 2022 grievances summarized above, which sufficiently described the conduct of and date of Plaintiff's interaction with the mental health provider later identified as Lowery.

The ARB response to the April 10, 2022 grievance instructed Plaintiff to provide his original grievance and responses from prison officials (Doc. 66-2, p. 38).  However, that instruction overlooked the fact that Plaintiff properly filed his original grievance directly to the

10

ARB because it involved events that took place at his former prison – thus he had no responses from the officials there.  The ARB's instruction left Plaintiff with no further recourse and effectively thwarted his attempt to exhaust the grievance procedure.  The ARB's response to the duplicate April 10, 2022 grievance noted it was addressed on May 2, 2022 and stated "No further redress." (Doc. 66-2, p. 58).  Similarly, the ARB responded to the May 5, 2022 and May 7, 2022 grievances noting they were duplicate issues previously addressed on May 2, 2022 and May 4, 2022 (Doc. 55-2, p. 414).  As such, Plaintiff had no other available remedies for exhausting the matters presented in his grievances dated April 10, 2022, May 5, 2022, and May 7, 2022.

Moreover, Plaintiff's November 17, 2022 grievance identified Lowery by name and alleged she hindered his attempt to obtain mental health treatment.  That grievance was fully exhausted to the ARB.

Because Lowery has not met her burden to demonstrate that Plaintiff failed to exhaust the grievance procedure regarding his claims against her, her motion for summary judgment (Doc. 54) will be denied.

**Motion for Partial Summary Judgment by the IDOC Defendants (Doc. 66)**

This motion seeks dismissal of Count 1 against Clark and Anderton and dismissal of Tasky and Hughes, who are named in Counts 2 and 9 (Doc. 66, p. 2).  Defendants do not challenge the remainder of Counts 2 and 9, or Counts 3, 5, and 6.

Clark and Anderton acknowledge that Plaintiff raised the matter of his freezing cell in the grievances dated April 11, 2022, May 5, 2022, and May 7, 2022 that included the 12-page letter and named them both (Doc. 66, p. 9).  However, they contend those grievances were improper because they were not submitted on the IDOC's Offender's Grievance Form.  *Id.*  But this is not a sufficient reason to reject Plaintiff's grievance, which used the official form and attached

11

additional pages.

The Illinois Administrative Code provides: "An offender *may* file a written grievance on a grievance form that shall be made available in all living units." 20 ILL. ADMIN. CODE § 504.810(a) (emphasis added). Moreover, the ARB rejected Plaintiff's first April 11, 2022 grievance for his failure to include the original responses from the grievance officer and other officials which, as noted above, were never issued because Plaintiff filed the grievance directly with the ARB pursuant to the applicable rules (Doc. 66-2, p. 58). Consequently, the ARB thwarted Plaintiff's attempt to exhaust this grievance as well as the duplicates he submitted in the ensuing weeks. The April 10, 2022 grievances sufficiently exhausted Plaintiff's claims against Clark and Anderton in Count 1, and this portion of the motion (Doc. 66) will be denied.

The IDOC Defendants further argue Plaintiff failed to mention Tasky or Hughes by name in any of his grievances, and as a result, his claims against them were not properly exhausted (Doc. 66, p. 10). They are correct that Plaintiff's grievances did not include Hughes' name or description. However, the April 10, 2022 grievances described the dates and nature of Plaintiff's interactions with the adjustment committee regarding the February 25, 2022 disciplinary ticket, and included a copy of the committee's summary naming Chair Person Tasky, who signed the document (Doc. 66-2, p. 53). Therefore, the grievance identified Tasky and served the purpose of alerting the ARB to Plaintiff's claims so it could investigate and resolve the issue. As Plaintiff notes, the ARB investigated the disciplinary matter and corrected one of the charges on July 8, 2022 (Doc. 68, pp. 6, 11; Doc. 66-2, p. 13). The motion (Doc. 66) will therefore be denied as to Tasky and granted as to Hughes.

## DISPOSITION

The Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendant Lowery (Doc. 54) is **DENIED**. The Motion for Partial Summary

Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendants Anderton, Clark, Cheek, McBride, Tasky, Miles, and Hughes (Doc. 66) is **DENIED in part** as to the claims against Anderton, Clark, and Tasky, and **GRANTED in part** as to the claims against Hughes. Defendant Latoya Hughes and the claims against her are **DISMISSED** from the action without prejudice for failure to exhaust administrative remedies.

The matter of exhaustion of administrative remedies now being resolved, the stay on merits discovery is **LIFTED** and the parties can proceed with discovery on the merits of Plaintiff's claims. The Court will enter a separate scheduling order setting discovery and dispositive motion deadlines.

**IT IS SO ORDERED.**

**DATED: February 2, 2026**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**Chief U.S. District Judge**